THIS was an action of trover by James Tatman against Abel J. Barrett, to recover the value of timber cut and carried away and converted to his use by the defendant. The lands upon which it was cut, had been devised by the will of Charles Jones to the plaintiff, with authority and for the purpose of selling and disposing of the timber upon them, which consisted of two tracts, one of a hundred and twenty, and the other of seventy-six acres. The defendant had cut and carried away from them and disposed of to his own use, four thousand and ninety-seven railroad cross-ties, one hundred and twenty-nine piles, eighteen inches thick at the butt, and thirty-five to forty feet in length, and six inches thick at the small ends, and one hundred and ninety-three saw logs averaging two feet in diameter at the butt and from thirty-five to forty feet in length, and which were afterward cut by him into about sixty thousand feet of sawed lumber at his mills in Wilmington. The timber was all white oak, and the current prices of such timber at the time, were also proved.
The defence was that he had bought of the plaintiff and paid him for all the timber he had cut upon and carried *Page 227 
away from the lands and converted to his use, in support of which a written receipt and contract signed by the plaintiff, of the following tenor was given in evidence:
 "Wilmington, May 20th, 1859.
Received of Barrett, Stearns Co., five hundred dollars, being in full for all white oak timber large enough to make cross-ties on my land near Harrington, situated on the Delaware R. R., with the privilege of crossing my other lands to get to it and hauling the timber to the Rail Road."
In reply, the plaintiff's counsel, to explain the import of the terms and what was meant by the words, "all white oak timber large enough to make cross ties," offered in evidence a letter previously addressed by the defendant to the plaintiff, to the following effect:
 "Wilmington, May 12th, 1859.
James Tatman Esq., Dear Sir: Yours came to hand and contents noticed. The offer I made you is all I can do; ($500) five hundred dollars is all I can see in it, or 121/2 cts. per piece for the White Oak by the tie."
 Yours truly, A. J. BARRETT."
 E. Saulsbury, for the defendant, objected to the admissibility of it. No colloquium or conversation between the parties prior to the execution of a written contract, was admissible in evidence to qualify, control, or explain it. 1 Greenl. Ev. secs. 275, 277.
Smithers, for the plaintiff. Such evidence as had just been tendered, was always admissible for the purpose of applying the written contract to the subject matter of it, and parol proof was always competent for that special purpose whenever there was any uncertainty or ambiguity in that respect. When there was no ambiguity in the terms of the contract in themselves considered, but the uncertainty, or doubt arises outside of the *Page 228 
contract, and consisted simply in applying the contract to the subject of it, such evidence was admissible. 1 Greenl. Ev. Secs. 286, 283, 288. Peisch v. Dickson, 1 Mas. Rep. 11. Beamontand wife v. Field, 1 Barn, and Ald. 247.1 Greenl. Ev.sec. 297 in note. The terms employed in the written receipt and contract "for all white oak timber large enough to make cross-ties, on my land near Harrington on the Delaware Railroad," presented a case of latent ambiguity; for whether it meant and included all, or any of his white oak timber too large to make cross-ties, or larger in size than it was usual to cut and convert into cross-ties, was not certain, and the very doubt which had been suggested in regard to it, had arisen from the evidence aliunde,
and which had already been adduced on the other side, by which it had been shown that here were three kinds of white oak timber on the lands referred to, some too small for cross-ties, some of the proper and usual size cut for cross-ties, and a third kind much larger than was usually either bought or sold for that purpose. There was some white oak timber on the land which was not to pass by the contract, and that was all such timber as was not then large enough for cross-ties. That description of white oak timber was clearly not included in the contract, and if there was any too large to be judiciously and advantageously cut into cross-ties, and the evidence adduced by the defendant was to that effect for much the larger portion of the timber which he cut under the contract, was for that very reason applied by him to other uses, such as piles and saw logs and sawed lumber, was it not equally to be excluded from the contract within the reasonable meaning and intendment of it? At all events, did it not suggest and present such an uncertainty, such an ambiguity growing out of the subject matter of the contract, and arising altogether dehors
the contract itself, and was there not such a doubt involved in it with reference to that matter and that question, as the court must consider a latent ambiguity, which would not only warrant, but would require the introduction of parol testimony to explain and remove it? *Page 229 
 Comegys for the same. The letter offered in evidence did not fall under the rule referred to on the other side, which excluded parol evidence in general when offered to explain, add to, or vary the terms of a written contract. In this case the evidence offered, is in the first place, itself in writing, and in the next place, it was a part of the negotiation and was the first offer which led to the formation of the contract, and was cotemporaneous with it, and was in point of fact, a part of the transaction, and, consequently, of the contract itself. It says five hundred dollars was all he could give for the timber, on the land, that was to say, for all the white oak timber, or at the rate of 12 1/2 cents per cross-tie, whilst the contract says afterward five hundred dollars for all the white oak timber large enough to make cross-ties. Taking the two, and reading them together, what more could they reasonably import or possibly mean than that the defendant was willing to give that sum for the number of railroad-ties alone, which it would yield, and which, to use his own expressive term, was all he could see in it, or in other words, was full as much as the ties that could be got from the land, would be worth. Well, according to his own exhibit, he cut from it four thousand and ninety-seven railroad-ties alone, to say nothing of the one hundred and ninety-three saw logs and one hundred and twenty-nine piles, all of which were much too large and much too valuable for other uses, to be split or sawed into railroad-ties, and that number of ties at twelve and a half cents apiece, a fair price for them standing and growing in the tree, would make just five hundred and two dollars and twelve and a half cents. It not only showed that he knew exactly what he was contracting for and buying, but that he was too good a judge and too expert to be either cheated or deceived in the contract he was then making for the ties which he got from the timber, and which was all that was designed or contemplated by either of the parties when the offer was first made, and when the contract was entered into. The other construction of it, so as to extend it beyond the *Page 230 
original and legitimate purpose and intention of the parties to it, was wholly an afterthought on the part of the defendant, suggested by the very ambiguity involved in the terms of the receipt and contract, when we come to look outside of it and to apply it to the timber then standing and growing upon the land, the subject matter of it, and by which the defendant afterward discovered that it was doubtful and was susceptible of two different constructions and readings on its face, at least, when you come so to apply it. And hence his demand that it not only covered all the white oak timber growing on the land large enough to make railroad-ties, but also all that was more than large enough for that purpose. Could there then be any doubt under all the facts and circumstances attending it, that it constituted a very strong and decided case of latent ambiguity in a written contract, in which parol and extrinsic evidence was admissible according to all the authorities, for the purpose of reconciling the insufficiency of its terms with the real intent of the parties to it at the time it was entered into, and removing apparent obstacles and impediments to the due execution of it, which only appear or present themselves when you come to apply it to the subject matter of it?
Gordon, for the defendant. The letter offered in evidence was not cotemporaneous with the making of the contract but was written and addressed by the defendant to the plaintiff more than a week before that. Neither was it for the same reason, a part of the resgestœ, or a part of the transaction. The letter was written on the twelfth, and the contract was not made until the twentieth of May, 1859, and whatever might have been said or written by either of the parties to the other in the meantime, could constitute no part of the contract, and could have no effect to qualify or explain, or to restrict or extend, or to enlarge the meaning or scope of it, for it was in writing and as such, it must speak for itself in its own language; and which neither upon its face, nor in its application to the subject matter of *Page 231 
it, was susceptible of any doubt, uncertainty, or ambiguity in the construction and interpretation of the meaning of it. The contract was entered into on the day last mentioned, when the five hundred dollars was paid and the receipt of that date was given for it by the plaintiff to the defendant, in which was embodied and expressed the only contract ever made between them in regard to the matter; and although contained and expressed in a brief receipt simply, it was none the less complete or conclusive as a contract between them on the subject, than if it was nothing more than a contract merely, drawn and executed by both parties in the regular form usual in such cases. A receipt simply was always subject, though prima facie evidence of payment, to be contradicted and disproved by parol testimony, but when a receipt also embodied, or contained a contract, so far as the contract was concerned, it was conclusive and could not be altered, varied, added to, or explained, or contradicted by parol evidence. 1Greenl. Ev. sec. 305. If there was any ambiguity or uncertainty as to the meaning of the contract in the case, it consisted not in applying it to the subject matter of it, or as to what kind of white oak timber was contemplated and embraced in it, but arose upon the face of the instrument itself, and from the vagueness and want of precision in the terms employed in it to restrict the meaning of the parties to it, as had been so earnestly contended for by the counsel on the other side, and that constituted it a patent, and not a latent ambiguity, and therefore it could not be explained or removed by parol proof, or evidence aliunde. Parsons states the rule on the subject to be as follows: if the contract be intelligible and the evidence showed an uncertainty, not in the contract, but in the subject matter of its application, other evidence which would remove that uncertainty would be admissible; but if a contract was not certainly intelligible in itself, it may be said that evidence which makes it so, must make a new contract, because one that was intelligible could not be the same with one that was unintelligible, and therefore the evidence is not admissible. 2 Pars, on Contr.
560, 561. *Page 232 
But read the contract carefully in this case and see whether if there was any ambiguity or uncertainty apparent as to what kind of white oak timber on the lands referred to, was intended to be included in the sale made by it, it did not as readily appear and suggest itself on the face of the contract and upon the mere reading of it, as when the attempt was made to apply it to the subject matter of it? And if that was so, did it not Conclusively show that it was a patent, and not a latent ambiguity, or that it was, at least, an ambiguity of both descriptions?
By the Court. We have given the best consideration to the question presented we could, in the limited time afforded us for the purpose. So far as a receipt merely was concerned, though sufficient proof prima facie to establish the payment of the money stated in it, it might be impeached, contradicted, or entirely disproved by parol evidence. It was otherwise, however, with regard to a written contract included and embodied in it, unless it contained in its terms a latent ambiguity which required further proof than the contract itself afforded, to apply it intelligibly to the subject matter of it. Questions of interpretation, as well as construction of written instruments were for the court alone, and were to be decided by it, and recognizing this to be our duty in the present case, we must say we do not think that there is, or was any ambiguity apparent upon the face of the contract, or that there is any ambiguity developed or presented by it, when we come to apply it to the subject matter of the contract, when we contemplate it alone, and without any reference whatever to what is contained in the letter which preceded it, and which had been offered in evidence, and upon which alone this question had been raised and started in the case. By the terms of the contract, the sale by the plaintiff to the defendant, was of all the white oak timber on the land referred to, large enough to make cross-ties, which clearly implied upon the face of the contract with reference to the subject matter of it, that there was some white oak timber on the land large enough *Page 233 
to make cross-ties and some not large enough for that purpose. But was there any necessary implication arising from the terms of the contract, that there was another description of white oak timber on the land, which was also to be excluded from the operation of the contract of sale, or was there any thing in the contract to indicate that there was any white oak timber there so large that it could not be made into cross-ties? There was nothing in the contract itself, either express, or implied, that either the plaintiff was selling, or the defendant was buying the timber to make it into cross-ties exclusively, or even any of it for that purpose necessarily; and in the absence of any express terms which would necessarily import or imply such a restriction in the contract itself, we know of no construction and can discover no intendment, which would warrant us in adding them in effect, to the contract in this case. It was therefore neither a case of latent or patent ambiguity in the contract, in the opinion of the court, and the evidence offered must therefore be excluded.
The counsel for the plaintiffs notified the court that they would have to except to their ruling on the question, and without proceeding any further in the case, permitted the jury to render a verdict of not guilty.